JOSÉ SALAS NOA, individually and as father with *patria potestas*, etc., Plaintiffs and Appellants, *v.* CARMEN JOSEFINA CABASSA HERNÁNDEZ, Defendant and Appellee.

No. 9678.   Argued December 1, 1948.—Decided December 22, 1948.

---

424

*A. Quirós Méndez* for appellants. *R. Hernández Matos* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

On July 13, 1945, José Salas Noa, for himself and as father with *patria potestas* over his minor children, brought, in the District Court of San Juan, an action for the annulment of a mortgage foreclosure proceeding and for other relief. On the same day, the clerk issued the corresponding summons but it was not served until April 8, 1946, the date on which Juan Monsanto was notified of the proceeding "in his capacity as attorney-in-fact of the defendant Carmen Josefina Cabassa Hernández." On the 16th following, the defendant appeared solely for the purpose of challenging the jurisdiction of the court, on the grounds that she was a married woman who resided with her husband and the action involved properties belonging to the conjugal partnership, in spite of which she had been sued alone, and that it had been sought to notify her through her attorney-in-fact, without it having been stated that the latter was "an agent authorized by the defendant to receive service of process." At the request of the plaintiffs that motion of the defendant was set for July 15, 1946, but for reasons which do not appear from the record the hearing was not held on that date. On September 19 of that same year, the plaintiffs requested again the setting of said motion but the record does not disclose either that a new setting was made. At this stage, on March 16 of the following year, the plaintiffs filed a motion requesting that the summons already issued be set aside and a new one issued, the grounds for said motion being those already set up by the defendant when requesting the court to decline jurisdiction of the case. Five days later, without any intervention on the part of the defendant, the court granted plaintiffs' motion, annulled the summons issued, and ordered the issuance of "new summons to be served on the defendant." Upon the new summons being issued on April 22, 1947, it was personally served on the defendant, Carmen Josefina Cabassa Hernández, four days later. The latter then filed a motion to dismiss the

complaint, on the grounds that the lower court lacked jurisdiction over her person, because the service of the summons was void,[1] as the same had not been made within 90 days from the issuance of the original summons; that the defendant was a married woman when the action was commenced and the action involved and affected properties belonging to the conjugal partnership, in spite of which her husband had not been sued; that the complaint did not state facts sufficient to constitute a cause of action; and that the action had prescribed. At the instance of the plaintiffs said motion of the defendant was set for hearing on June 2, on which date the parties filed a stipulation, wherein they agreed and stipulated that the motion for dismissal should be decided by taking into consideration the allegations of the complaint in the action for nullity; the allegations of the motion for dismissal, including the summons issued on April 22, 1947, and the return of service thereof; the affidavit of the defendant, showing that she was a married woman at the time of the commencement of the action for nullity and of the summary foreclosure proceeding but stating that she was single when she acquired by assignment the mortgage credit the foreclosure of which is sought to be annulled; the original record of the summary foreclosure proceeding; a certified copy of the deed of voluntary mortgage and of the marshal's deed; certain tax receipts which were listed; and that the defendant and her husband were absent from Puerto Rico from 1938 to 1946.

After rendering a lengthy opinion, the lower court entered judgment granting the motion to dismiss for insufficiency, annulling the second summons issued, and dismissing the complaint in all its parts, with costs against the plaintiffs. From that judgment the plaintiffs have appealed, and the first error assigned is that the court erred in holding that the service of the summons was void.

---

[1] The defendant referred to the second summons issued.

■ We have already stated when the complaint was filed, when the summons were issued, and the manner in which the latter were served. Really, we fail to see why the plaintiffs now insist on that error, since upon deciding that the second summons issued was void, the only thing the court ought to have done was to decline jurisdiction. The first summons had already been annulled at the instance of the plaintiffs, and notwithstanding the fact that it declared void the second summons, the lower court assumed jurisdiction and proceeded to decide the motion of dismissal taking into consideration therefor the allegations of the complaint, the stipulation filed by the parties, and the documents attached thereto. The action of the court, however, turned out to be correct because, as we shall see further on, the second summons issued was not void. The declaration of nullity thus made, although erroneous in our opinion, in no way prejudiced the rights of the plaintiffs. We will therefore discuss presently the first error assigned.

■ According to Rule 4 of the Rules of Civil Procedure, "upon the filing of the complaint the clerk shall forthwith issue a summons" and said summons "shall be served within 90 days after its issuance." The parties admit that in this case the first summons was issued on the same day on which the complaint was filed and that it was not served until nine months later. The second summons was issued almost two years after the filing of said complaint. It clearly appears that Rule 4 was not strictly complied with, but the failure to summon within the term of 90 days mentioned therein is not fatal. After its expiration, the court before which the case is pending may, for just cause and at the instance of the plaintiff, authorize the issuance of a new summons. That action rests in the sound discretion of the lower court, and we will not disturb such discretion unless there has been a clear abuse thereof. We do not believe that in this case there was such an abuse. (See by analogy *Fuentes* v. *Pérez*, 47 P.R.R. 865, 867; *Costa & Santini*,

*Succrs., Inc.* v. *Suliveres*, 44 P.R.R. 717 and *Estate of Chavier* v. *Estate of Giráldez*, 15 P.R.R. 145, in which § 88 and successive Sections of the Code of Civil Procedure are construed in connection with the issuance and service of process.) However, although the district court erred in holding that the second summons was void, such an error does not give rise to a reversal, since as we have already stated, the court assumed jurisdiction and proceeded to take cognizance of the motion to dismiss the complaint for insufficiency.

�manoeuvre The second, fifth, and sixth assignments will be jointly discussed. They are to the effect that (2) the lower court erred "in considering that the foreclosing creditor complied with § 169 of the Regulations for the Execution of the Mortgage Law, stating the net amount of the claim which by the mere act of instituting the proceeding the creditor had contracted"; (5) "in holding that the mortgagees were required to pay a net amount, in spite of the fact that the amount for expenses, costs, disbursements, and attorney's fees had not been determined by the court"; and (6) "in considering that it was not necessary to serve the debtors with notice of the memorandum of costs and disbursements and of the order approving the same."

Section 169 of the Regulations, *supra*, provides that in the initial petition there shall be stated "the net amount of the claim which, by the mere act of instituting the proceedings the creditor will contract, assuming liability for any loss or damage the debtor or interested third persons may suffer through malice or negligence in not making a true statement of facts. . ." The initial petition in this case alleged the execution of a mortgage deed to secure a loan for $30,000, $2,000 as interest at 8 per cent until full payment of the principal, and $1,000 for costs, expenses, disbursements, and attorney's fees; the recording of the deed in the registry; the default in the payment thereof and that it had not been canceled; and that the property was encumbered by a second mortgage; and it prayed that a

writ be issued directing the marshal to demand personally from the debtors, within the unextendible term of 30 days, the payment of the $30,000 principal, plus the sum of $1,411.50 as interest due up to the filing of the complaint; the interest which might be accrued on such $30,000 at the rate of 8 per cent per annum since March 27, 1932, up to the full payment of the principal obligation, and $1,000 for costs, expenses, disbursements, and attorney's fees of the creditor, subject to the liquidation and determination of the proper amount by the lower court; and it stated that the plaintiff was willing to pay to the debtors or interested third persons the amount of any damages which they might suffer by reason of malice or negligence in the true statement of the facts set forth in the initial petition.

The provisions of the Mortgage Law and its Regulations relating to summary foreclosure proceedings should be strictly complied with. *Ayala* v. *Flores*, 50 P.R.R. 832. That does not mean, however, that a mere deviation from the provisions thereof produces the nullity of the proceeding. From the initial petition it clearly appears that the sums claimed were liquidated as to the principal as well as to the interest and costs. The fact that it was prayed that demand be made upon the debtors to pay in addition to the $30,000 as principal, the sum of $1,411.50 as interest thereon at the rate of 8 per cent per annum since March 27, 1932, *up to the full payment of the main obligation,* plus $1,000 for costs, expenses, disbursements, and attorney's fees, *subject to the liquidation and determination of the proper amount by the court,* did not render unliquidated the amount of the claim. Said petition clearly stated the principal amount owed, the interest accrued up to the filing of the petition, and the sum secured for costs and attorney's fees. The claiming of the interest which might accrue at 8 per cent per annum up to the full payment of the main obligation and the averment that the sum of $1,000 for costs and

fees would be subject to liquidation and determination did not at all render unliquidated the amount claimed. As to the former, the sum already accrued was clearly stated, and a simple arithmetical operation would show the amount that finally would have to be paid on that account. Regarding the latter, in the initial petition, as well as in the writ requiring payment and in the order issued pursuant thereto, the total amount of the costs and fees secured by the mortgage and to be paid by the debtors was expressly stated. It was afterward, when the creditor moved for the issuance of the order of execution, that the amount for costs and fees was reduced to $550.45. That was the sum stated on that account in the order of execution, in the writ, and in the advertisement for public sale. Such action, however, far from prejudicing the debtors, benefited them and should not produce the nullity of the proceedings.

On the other hand, as we will presently see, it was not necessary either to notify the debtors of the memorandum of costs or of the order approving the same. The statement in the initial petition that the sum of $1,000 would be subject to liquidation and determination, was merely a consequence of the decisions of this Court prevailing at the time when the foreclosure proceeding was instituted. See *Vidal v. District Court*, 40 P.R.R. 100, and *Anáud v. Martínez et al.*, 40 P.R.R. 641. Deviating from the rule which up to that time had prevailed, we decided in those cases that it was necessary to file within the foreclosure proceeding a memorandum of costs so that the amount of the fees would be then determined. But that doctrine was overruled a short time afterwards, and the previous practice of considering the sum agreed for costs and attorney's fees as a liquidated amount was then re-established. *Arsuaga v. District Court*, 43 P.R.R. 958; *Tellado v. The San Juan Fruit Company*, 48 P.R.R. 925; *Iglesias v. Jefferson Standard Life Ins. Co.*, 45 P.R.R. 690; *Balet v. Dávila*, 44 P.R.R. 49; *Torres v. Luiña*, 44 P.R.R. 414; *Gutiérrez v. Longpré*, 44 P.R.R. 643. At the

present time that doctrine is in force. Hence, we hold that in the initial petition attacked in this action for nullity, the statute was substantially complied with, since said petition set forth the liquidated amounts claimed on account of prin- cipal as well as on account of interest, costs, and attorney's fees. See *Torres* v. *Fernández*, 65 P.R.R. 584; *Delgado* v. *Banco Popular*, 55 P.R.R. 912. The said errors are non-existent.

The fourth error assigned is that the court erred in considering that the fact that the rents of the mortgaged property were attached to secure the effectiveness of the judgment and that the sale of said property was decreed for paying to the foreclosing creditor the sums claimed, did not invalidate the proceeding.

Shortly after the filing of the initial petition, the plain- tiff requested that in order to secure the effectiveness of the judgment, the due and unpaid rents and those payable until the creditor should recover the full amount of her claim should be attached. The court issued the order of attach- ment, and the marshal proceeded to comply therewith attach- ing the rents. After the property was awarded to the credi- tor and the marshal's deed was executed, the creditor requested that, since the award did not cover the total amount claimed in the summary foreclosure proceeding, it should be ordered that the $260 as rent that had been attached by the marshal be delivered to her. The court issued an order accordingly. The appellants, as we have stated, now con- tend that the attachment and award of the rents produces the nullity of the foreclosure proceeding. They are wrong.

Pursuant to the provisions of §§ 110 and 111 of the Mort- gage Law, the mortgage extends to "due and unpaid rents, whatever be the cause of their not having been collected, and those payable until the creditor shall have recovered his full claim." It was pursuant to this provision that the creditor requested the attachment of the rents of the property in- volved in the proceeding. However, while the foreclosure

proceeding was pending the creditor did nothing more than obtain the attachment of the rents, perhaps anticipating that the mortgaged property, upon being sold at public auction would not yield a sufficient amount to cover the total credit claimed by her. That was what actually happened, and it was only after the sale and the issuance of the marshal's deed that she requested and obtained the possession of the sum attached. The attachment of the rents did not create any absolute right in favor of the creditor. It was merely an embryonal right, an initial step to secure any deficiency. That right and that step were materialized when the sum attached was delivered to the creditor. *Ramírez* v. *Registrar of San Juan*, 31 P.R.R. 486. However, the summary foreclosure proceeding ended with the public sale and with the issuance of the marshal's deed, and this took place before the delivery of the rents by the court. *Arroyo* v. *Zabala*, 40 P.R.R. 257, 267; *Federal Land Bank* v. *Court*, 47 P.R.R. 399. This subsequent action of the court can not cause the nullity of the foreclosure proceeding already ended.[2]

In the seventh error assigned it is contended that the lower court erred in declaring valid the public sale of the mortgaged property, since it considered that the price for which it was awarded to the foreclosing creditor was not grossly inadequate. At the time (1925) when the deed involved in the summary foreclosure proceeding was executed, it was not necessary to state therein the sum in which the contracting parties assessed the mortgaged property. Since such a requisite did not exist, the parties did not deem it proper to set forth that valuation. Cf. *Fernández* v. *Carrasquillo*, 62 P.R.R. 407; *Heirs of Molina* v. *Soc. Protectora de Niños*, 61 P.R.R. 801; *Iglesias* v. *Registrar*, 43 P.R.R. 18.

According to the tax receipts introduced in evidence as part of the stipulation, the mortgaged property was assessed

---

[2] The instant case does not involve the nullity or validity of the attachment itself of the rents. See, however, *Morales* v. *Cabrera*, 48 P.R.R. 706; *Ramírez* v. *District Court*, 43 P.R.R. 220 and *García Méndez* v. *Villarrubia*, 42 P.R.R. 85.

in $35,180. At the foreclosure sale, the property was awarded to the creditor for $22,000 in partial satisfaction of her credit. If we take into consideration the additional fact that taxes on said property were owed for several years and that the creditor had to pay them, we must conclude that the total cost of the property to the creditor was not $22,000 but a larger amount, and that the latter, when compared with the assessment of the property, is not so inadequate as to render the proceeding void. *P. R. & Am. Ins. Co.* v. *Court*, 47 P.R.R. 404; *García* v. *Humacao Fruit Co.*, 25 P.R.R. 635.

We have purposely left the third error for discussion at the last. It is urged therein that the court erred in considering valid the writ demanding payment. In the initial petition it was repeatedly stated that the amount of the loan and of the mortgage to secure the same was $30,000, and prayer was made, we repeat, for the issuance of an order demanding payment of the principal sum plus the interest and costs which were specified. However, although in the writ a term of 30 days was specified for the defendants to pay the amounts owed by them, that is, $30,000 as principal, $1,411.50 as interest accrued and fixed up to the filing of the petition for which the property recorded in their name and encumbered in this case answered, mention was also made of *the interest which might accrue on said Three Thousand Dollars at the rate of 8 per cent per annum from March 27, 1932, up to the full payment of the indebtedness mentioned.* The order issued by the clerk textually copied the said writ and directed the marshal to require the defendants to pay, within the period of 30 days, the sums claimed, that is, *Three Thousand Dollars* as principal, $1,411.50 as interest accrued and fixed up to that time, the interest which might accrue on that *Three Thousand Dollars* at the rate of 8 per cent per annum from March 27, 1932, until full payment of the indebtedness mentioned in the initial petition, etc. In his return the marshal stated that he delivered to

José Salas Noa and to his wife copies of the complaint, of the writ, of the mortgage deed, of the assignment of the credit in favor of the plaintiff, of the certificate of the registrar, and of the summons, and that he made demand on them to pay to the creditor, within the period of 30 days, *the sum of Three Thousand Dollars*, $1,411.50 as accrued interest, etc. However, in the advertisements published for the sale of the property the sum of $30,000 was constantly mentioned. The reference to Three Thousand Dollars made both in the writ demanding payment and in the order issued by the clerk was undoubtedly a clerical error. The liability mentioned was no other than the principal sum of $30,000. From the wording of the initial petition, of the writ demanding payment, of the order, and of the published notices, the debtors must have become perfectly aware not only of the fact that the amount of the mortgage was $30,000 but also that that was the sum for which, in default of payment within 30 days, the property would be sold at public auction. They were not deceived by the mistake alluded to. They had full knowledge of the amount of the loan and of the mortgage and it should have been easy for them to determine that it was a mere clerical error. Although, as we have already stated, the provisions of the Mortgage Law and its Regulations which relate to summary foreclosure proceedings must be strictly complied with, a mistake such as the one which occurred herein can not give rise to the nullity of the foreclosure proceeding.

The appellants finally urge that the foreclosure proceeding is void because there was no previous attachment of the property. Since long ago this Court has held that in a summary foreclosure proceeding a previous attachment of the property mortgaged is not necessary in order to give the court jurisdiction of said proceeding. *Petterson* v. *Contreras*, 42 P.R.R. 474, and cases cited therein.

The judgment appealed from should be affirmed.